

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

May 15, 1957.

Honorable John H. Winters,
Executive Director,
State Department of
  Public Welfare,
Austin, Texas

Opinion No. WW-129

Re: May the State Department
of Public Welfare depos-
it the proceeds from the
sale of used commodity
containers directly into
the revolving fund of
each Distribution Dis-
trict under the pro-
visions of House Bill
No. 441, Acts of the
53rd Legislature, R.S.,
1953, Chapter 305, page
757, (codified as
Section 7-A of Article
695c Vernon's Civil
Statutes)?

Re: Does the Executive Dir-
ector of the State
Department of Public
Welfare have the legal
right and authority to
transfer funds out of
the revolving fund in
one District to the
revolving fund in an-
other District under the
provisions of House Bill
No. 441, Acts of the
53rd Legislature, R. S.
1953, Ch. 305, p. 757
(codified as Section 7-A
of Article 695c Vernon's
Civil Statutes)?

Dear Mr. Winters:

    This Opinion is in response to your request of April
23, 1957, concerning various questions arising under the pro-
visions of House Bill No. 441, Acts of the 53rd Legislature,
R. S. 1953, ch. 305, p. 757, (codified as Section 7-A of
Article 695c Vernon's Civil Statutes).

In your request you pose questions on two separate and distinct problems.  We shall answer your questions on each problem in the order presented.  Your questions under the first problem are as follows:

1.  "Please advise us whether or not the State Department of Public Welfare may deposit the proceeds from the sale of empty containers into the revolving funds in the respective Districts in the State, and, if so, may the Department expend such funds for purposes set out in the law for the expenditure of the respective revolving funds?

2.  "If, in your opinion, the proceeds from the sale of empty containers may not be deposited in the revolving funds in the respective Districts and expended by the Department in accordance with the provisions for the expenditure of such revolving funds, then is the Department required to deposit such funds in the 'Commodity Distribution Fund' in the State Treasury?  If the funds are deposited in the Commodity Distribution Fund' in the State Treasury, can the Department use such funds for the operation of the program without further specific appropriation therefor?  Or, is the provision in House Bill No. 441 authorizing the expenditure of such funds sufficient appropriation to enable the Department to use such funds?"

Section 1 of H. B. 441 of the 53rd Legislature R. S.,1953, after providing for the assessment of handling charges against the recipients of commodities, further provides in part as follows:

"It is further provided that the money to be assessed shall be paid to the State Department of Public Welfare and shall be used for no other purposes except for the necessary economic operation of the Program subject to rules and regulations which may be established by the State Department of Public Welfare, by the provisions of this Act, and by the provisions of the general appropriation Acts of the Legislature.  The funds received by the State Department of Public Welfare shall be deposited in a separate account in the State Treasury, and shall be subject to withdrawals upon authorization by the Executive Director of said Department.  The State Department of Public Welfare is hereby authorized and empowered to establish in each Distribution District, under the

direction of the State Department of Public Welfare, a revolving fund or petty cash expense fund for the purpose of making emergency payments for services or goods, or other necessary emergency activities.  The amounts of such funds shall be set by the Executive Director of the State Department of Public Welfare in relation to the anticipated needs of the respective Districts and in accordance with rules and regulations prescribed by the State Department of Public Welfare. Creation and reimbursement of said revolving fund shall be paid out of assessments collected by the State Department of Public Welfare from the recipients of commodities."

"* * *"

"The revolving fund at the disposal of each Distributing Agent shall be deposited in a bank designated by the Executive Director of the State Department of Public Welfare in an account to be known as the 'Commodity Distribution Fund' and such money shall be expended upon the authority of the Distributing Agent under the direction of the State Department of Public Welfare.  The Distributing Agent will make a monthly report to the State Department of Public Welfare of funds received and disbursed . . ."

"* * *"

"The State Department of Public Welfare is hereby authorized to sell used commodity containers and the proceeds from the sale of the used commodity containers in each District shall be deposited in the special fund known as the 'Commodity Distribution Fund' to be used for the purpose of furthering the commodity program and expended as hereinbefore provided."

The above quoted provisions, in our opinion, require the State Department of Public Welfare to deposit the proceeds from the sale of the used commodity containers in the revolving funds in the respective Distribution Districts of the State.  The Act, as quoted above, provides for the deposit of the revolving fund in a designated bank in an account to be known as the "Commodity Distribution Fund."  The Act further provides that:

". . .In the event of the termination of the
Commodity Distribution Program, the money remain-
ing on hand in the 'Commodity Distribution Fund'
in each District, after all due and just accounts
are paid, will be refunded to the contributors on
a pro rata basis. . . "

These two references to "Commodity Distribution Fund" are
the only instances in which the term "Commodity Distribution
Fund" is used in the Act, with the exception of its use in
the section which provides for the sale of used commodity
containers and the deposit of the proceeds.  It is also to
be noted that the Act specifically provides that any funds
received in the form of assessments by the State Department
of Public Welfare be deposited in a separate account in the
State Treasury.  The only other reference in the Act to the
account in the State Treasury is to "the separate special
fund in the bank in Austin created pursuant to and in accord-
ance with the provisions of this Act."  Thus in two specific
instances, other than in the section in question, reference
is made to the funds on deposit in banks in the Distribution
Districts, as the "Commodity Distribution Fund" and at no
place in the Act is reference made to the fund in the State
Treasury as the "Commodity Distribution Fund."  In addition
the Act requires the Distributing Agent in each Distribution
District to make a monthly report to the State Department of
Public Welfare of funds received and disbursed.  From our
reading of the Act we are of the opinion that all funds re-
ceived by the particular Distribution Districts, with the
exception of the proceeds from the sale of used commodity
containers, are to come to the Distribution Districts by
way of the transfer of funds on deposit in the State Treasury.
Therefore, the requirement that a report of receipts be made
would be of little value if in fact the Legislature had not
intended the receipt of funds directly into the revolving
fund of the particular Distribution District in the case of
proceeds from the sale of used commodity containers.  For
these reasons, we believe that the Legislature intended that
the deposit of the proceeds of the sale of used commodity
containers be directly into the revolving fund in the respect-
ive Districts in the State.

You also ask if the Department may expend such funds for
purposes set out in the law for the expenditure of the re-
spective revolving funds.  The section of the Act which
authorizes the sale of used commodity containers and the
deposit of the proceeds therefrom also provides that the
deposited funds "be used for the purpose of furthering the
commodity program and expended as hereinbefore provided."

Prior paragraphs of Section 1 of the Act, which are set forth above, provide for the expenditure of funds which have been received by virtue of assessments and it is our opinion that the phrase "the purpose of furthering the commodity program and expended as hereinbefore provided" refers to these prior provisions and therefore the Department may expend such funds for purposes set out in the law for the expenditure of the respective revolving funds.

In the light of our answer to your first question, it becomes unnecessary to answer your second question.

In connection with your Second problem you have posed the following questions:

1. "Does the Executive Director of the State Department of Public Welfare have the legal right and authority to transfer funds out of the revolving fund in one District to the revolving fund in another District?"

2. "If you answer the first question in the affirmative, then can the Executive Director of the Department transfer the funds from the revolving fund in the former Cameron District (which is no longer in existence) to the revolving fund in one or more other Districts that are still active in the State?"

3. "If a direct transfer cannot be made, then what disposition should the Department make of the revolving fund in the Cameron District which no longer exists? Should the balance of the revolving fund be transferred to the 'Commodity Distribution Fund' in the State Treasury and, if so, then can the Department expend this money in addition to the Appropriation Item No. 80 under the appropriation to the State Department of Public Welfare in House Bill No. 140 (Departmental Appropriation Bill)?"

House Bill No. 441, Acts of the 53rd Legislature, R. S. 1953, ch. 304, p. 757 (codified as Section 7-A of Article 695c, Vernon's Civil Statutes), after providing for the creation of Distribution Districts and the assessment of the parties who receive commodities under the Act, states in part:

". . .The funds received by The State Department of Public Welfare shall be deposited in a separate account in the State Treasury and shall be subject to withdrawals upon authorization by the Executive

<u>Director of said Department.</u> The State Department of Public Welfare is hereby authorized and empowered to establish in each Distribution District, under the direction of the State Department of Public Welfare, a revolving fund or petty cash expense fund for the purpose of making emergency payments for services or goods, or other necessary emergency activities. <u>The amounts of such funds shall be set by the Executive Director of the State Department of Public Welfare in relation to the anticipated needs of the respective Districts and in accordance with rules and regulations prescribed by the State Department of Public Welfare. Creation and reimbursement of said revolving fund</u> shall be paid out of assessments collected by the State Department of Public Welfare from the recipients of commodities.

". . .In the event of the <u>termination</u> of the Commodity Distribution Program, the money remaining on hand in the 'Commodity Distribution Fund' in each District, after all due and just accounts are paid, will be refunded to the contributors on a pro rata basis. In the event of the termination of the Commodity Distribution Program, the money remaining on hand in the separate special fund in the bank in Austin created pursuant to and in accordance with the provisions of this Act, after all due and just accounts are paid will be refunded to the contributors on a pro rata basis." (Emphasis ours)

The above quoted provisions in general, and the underscored portions in particular, grant broad powers to the Executive Director of the State Department of Public Welfare in the administration of the funds which are to be transferred to the individual Distribution Districts, and provide for wide discretion in his granting of funds to the Districts. Both the initial appropriation for the creation of these revolving funds, which is contained in Section 2 of House Bill No. 441, Acts of the 53rd Legislature, R.S.,1953, ch. 305, p. 757, and the subsequent biennial Appropriation Bill, House Bill No. 140, Acts of the 54th Legislature, ch. 305, p. 1507, provide lump sum appropriations for the withdrawal of funds from the State Treasury, and neither appropriation in any way indicates any particular appropriation for any individual Distribution District. Because of these powers and because we know of no constitutional or statutory prohibitions which would prevent the transfer of funds between Distribution Districts, it is our opinion that the

Executive Director of the State Department of Public Welfare has the legal right and authority to transfer funds out of the revolving fund in one district into the revolving fund in another district.

The provisions quoted above provide for the refunding of any funds remaining in the revolving funds and in the State Treasury in the event that the Commodity Distribution Program is terminated. You state that the Department has found that it would be more economical and to the best interest of the program for the Cameron Distribution District to be discontinued. In view of the fact that the entire Commodity Distribution Program is not being terminated, and in the light of our holding in the preceding question, it is our opinion that funds from the former Cameron District may be transferred to one or more other Districts that are still active in the State.

In the light of our answers to the above question, it becomes unnecessary to answer your third question regarding your second problem.

## SUMMARY

(1) The State Department of Public Welfare may deposit the proceeds from the sale of used commodity containers directly into the revolving fund of each Distribution District under the provisions of House Bill No. 441, Acts of the 53rd Legislature, R. S. 1953, ch. 305, p. 757 (codified as Section 7-A of Article 695c, Vernon's Civil Statutes).

(2) The Executive Director of the State Department of Public Welfare has the legal right and authority to transfer funds out of the revolving fund in one District to the revolving fund in another District under the provisions of House Bill No. 441, Acts of the 53rd Legislature, R. S. 1953, ch. 305, p. 757. (Codified as Section 7-A of Article 695c, Vernon's Civil Statutes).

Very truly yours,

WILL WILSON
Attorney General

By     *Wayland C. Rivers, Jr.*

Wayland C. Rivers, Jr.
Assistant

WCR:pf:rh

APPROVED:

OPINION COMMITTEE

H. Grady Chandler, Chairman
James W. Wilson
Ralph R. Rash
Fred Werkenthin

REVIEWED FOR THE ATTORNEY GENERAL

By:  Geo. P. Blackburn